PHILLIPS *v.* ASHBY.

5-1765                                        320 S. W. 2d 260

Opinion delivered February 2, 1959.

*Reid & Burge,* for appellant.

*Taylor & Sudbury,* for appellee.

CARLETON HARRIS, Chief Justice. On the night of June 11, 1957, a truck belonging to Isaac Ashby, appellee herein, became stuck in the mud on a dirt road near Blytheville. Efforts to extricate the truck only succeeded in miring it deeper, and the Phillips Motor Company was requested to send a wrecker. The wrecker, driven by Carl Allbritton, after picking up Ashby and Olin Little, who was with Ashby, went to the location of the mired truck. In getting into position to extricate the truck from the mud, the wrecker became stuck. Ashby and Little took positions on the left side of the wrecker, back of the cab, and pushed as the driver rocked backward and forward in an effort to release the wrecker from the mud. As the wrecker moved out, Mr. Ashby was struck by some portion of the vehicle along the right knee, causing painful injuries for which he instituted suit. The complaint alleged that

"defendants' servant and employee, Carl Allbritton, and while in the employ of the defendants, and who knew plaintiff's position, suddenly negligently and carelessly greatly increased the supply of gasoline, causing the said wrecker to suddenly lurch forward.

That when the defendants' wrecker suddenly and without warning lurched forward, its left rear bumper struck this plaintiff behind his right knee and right heel, bruising and cutting his leg and breaking his right heel."

Appellants answered, first denying any negligence, pleading contributory negligence, and further pleaded that appellee assumed all risks incidental to the undertaking. On trial, the jury returned a verdict in appellee's favor in the amount of $7,200, for which amount the court rendered judgment. From such judgment, comes this appeal.

For reversal, three points are urged, the first being that the trial court erred in not directing a verdict for

appellants. Under our view, as hereinafter set out, a discussion of other alleged errors is unnecessary.

The sole charge of negligence against Allbritton has previously been quoted from the complaint. According to the evidence, the back wheels of the wrecker mired down as Allbritton sought to get into position to extricate the truck. Little and Ashby walked up to the driver's side of the door, and took hold of the wrecker to help get it out. According to Ashby, Little "* * * was right at the door. I was right behind him with my hands on the door right behind the cab." After rocking back and forth two or three times, the wrecker came out. "To tell the truth, he was rocking. He hit me just like that. (snaps fingers) I was laying on the ground. * * * Q. Did this truck slide any? A. It was possible. Like I said, it was like that. (snaps fingers) I was on the ground." The witness then testified that he doubted that the wrecker slid sideways more than six inches. When asked if his foot slipped, he replied, "I don't know. It happened so quick, I don't know." Ashby was struck on the side of the right knee.[1] He stated that he was struck by the bumper, or, as he described it, the "draw bar." According to his evidence, the occurrence took place somewhere between 9:30 and 10:00 o'clock on a clear night, and Allbritton could have seen him "without any doubt." Appellee testified that he heard somebody say, "Keep rocking, and I believe we can get it out," but he did not know whether the remark was made by Allbritton or Little. On cross examination, he admitted that in trying to get his own truck out before calling the wrecker, he had rocked it and accelerated the engine, but "He rocked his more than I did mine. I accelerated mine a little and couldn't get out." Ashby admitted that to get automobiles and trucks out of mud, it is necessary to accelerate the motor, as he stated, "to a certain extent." His testimony reflects that no request was made by Allbritton for aid in getting out of the hole; that he (Ashby) did not tell the driver he was helping; that he chose his

---

[1] The ligaments were badly torn in the knee, ankle fractured, and the heelbone cracked.

own position from which to do the pushing, and had already observed the "draw bar" at the back.

Little's testimony was very similar. "Mr. Ashby and me went by the side of him. We went to rock it. Mr. Ashby and me said we were going to rock it out and he[2] said, 'I believe we can.'" He testified that he took a position on the south side of the truck, placing his hand on the front part of the cab "where the glass rolled down," and that appellee was right behind him. The witness stated that the driver of the wrecker could see him, and could have seen Ashby if he had looked; that the vehicle was rocked backward and forward two or three times. He heard no request from Allbritton for Ashby to push on the wrecker.

Allbritton testified that the wrecker became mired in the same mud hole as the truck; that he, quoting, "began rocking my truck backwards two or three times and accelerating it fairly heavy in order to get it out of the mud." He testified he did not ask anyone to help him, and that Ashby did not say anything to him about helping or pushing. His testimony reflects that upon pulling loose from the mud, he went straight ahead.

We are unable, from the record, to find any negligence on the part of Allbritton, and of course, such negligence must be shown before Ashby is entitled to recover. The testimony of all parties reflects that the wrecker was driven straight ahead when coming out of the mud hole, and it seems remarkable that the vehicle, with its wheels spinning in slick gumbo mud, did not slide sideways more than six inches. Admittedly, appellee took up his position of his own own accord, without any direction from the driver, and in fact, the undisputed evidence shows that no request for help was made. In *Saliba* v. *Saliba*, 178 Ark. 250, 11 S. W. 2d 774, 61 A. L. R. 1348, and *Blakemore* v. *Stevens*, 188 Ark. 755, 67 S. W. 2d 733, recoveries were allowed to parties who were injured while assisting in extricating vehicles from mud holes, but the circumstances in those cases were far different from those in the case at bar. For instance, in

---

[2] Evidently referring to Allbritton.

the *Saliba* case, the proof showed that the injured plaintiff was invited to get behind a stuck car and push it; that while so engaged, the driver suddenly put the car in reverse, and plaintiff was injured when the car rolled backwards. In the *Blakemore* case, plaintiff was asked to help in pushing a car out of the mire, and stationed himself on the right hand side of the car in a position to assist. The car was being pushed backwards, and without warning, the defendant driver suddenly cut the steering wheel to the left, throwing the right front wheel from under the right front fender, and the car, in its backward motion, ran over plaintiff. In the case before us, the only alleged negligence is "suddenly, negligently, and carelessly greatly increased the supply of gasoline causing the said wrecker to lurch forward." Common experience teaches that to get out of a mud hole, it is necessary to accelerate the engine. Additional power is needed. The method used by Allbritton would seem to be the usual method of those engaged in extricating a vehicle from mud and slime, *i. e.*, rocking back and forth, and accelerating the motor in an attempt to get sufficient momentum to come out of the hole. Of course, once the wheels get free of the mud and hit firm ground, the vehicle moves at a faster pace. We find no evidence that appellants' driver committed any unusual act which would result in taking appellee by surprise, and thus occasion the injuries complained of.

We are of the opinion that the trial court should have directed a verdict for appellants.

Reversed and dismissed.

JOHNSON, J., dissents.